IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| NATIONAL BANKERS TRUST CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 12-2674-STA-cgc ) |
| EAST WEST DISTRIBUTION & WAREHOUSING INC., | ) ) ) ) |
| Defendant. | ) |

---

ORDER DENYING PLAINTIFF'S EMERGENCY APPLICATION FOR A
TEMPORARY RESTRAINING ORDER

---

Before the Court is Plaintiff's Emergency Application for a Temporary Restraining Order ("TRO") (D.E. # 1), filed on July 31, 2012. For the following reasons, Plaintiff's Application is **DENIED**.

### BACKGROUND

Plaintiff filed its Emergency Application for a TRO ("the Application") on July 31, 2012 at 5:20 p.m. The Court was assigned to the case on August 1, 2012, at 8:43 a.m. The Application states that Plaintiff is "a factoring company that purchases accounts receivable from various trucking companies" and other "clients in the trucking industry." (Appl. ¶ 1, 5.) Defendant is a trucking company. (*Id.* ¶ 2.) A portion of Plaintiff's purchase price, known as the advance rate, is given to the client at the time of purchase. (*Id.* ¶ 5.) After Plaintiff receives bills

1

of lading and rate confirmations from the client, it sends a Notice of Assignment to the account debtor responsible for payment. (*Id.*) Next, Plaintiff pairs bills of lading with its own invoice and submits them to the account debtor for payment. (*Id.*) On December 27, 2010,[1] Plaintiff entered into a factoring agreement ("the Agreement") with Defendant. (*Id.* ¶ 6.)

Although Plaintiff does not identify which portions of the Agreement Defendant has allegedly breached, the Court has examined the Agreement and finds the following provisions relevant. Section 1(c) of the Agreement governs the financing of receivables:

> [Defendant] shall not present any invoices directly to Customer. The "Customer" shall mean any individual or entity that enters into a business transaction with [Defendant] wherein Customer uses [Defendant's] products or services. . . . [Defendant] shall <u>not</u> authorize any return of goods or services, price adjustments[,] or other credits to [Defendant] without the express written consent of [Plaintiff]. [Defendant] shall receive no payments of any kind from any Customer for any purpose. All payments by Customers must be made directly to [Plaintiff]. If [Defendant] receives payment from a Customer, [Defendant] shall immediately forward payment to [Plaintiff].

(Agreement, D.E. # 1-1, at 1, § 1(c) (emphasis in original).) Plaintiff has reserved several remedies under Sections 12 and 14 of the Agreement:

> If [Defendant] breaches this Agreement or a Customer fails to pay [Plaintiff], [Plaintiff] shall have [the] right of set-off against any and all other [Defendant] accounts, and may proceed directly against Guarantors or any other person or entity responsible for the performance of this Agreement, without first exhausting its remedies against any other person or entity responsible therefore to it, or any security held by [Plaintiff]. . . . All remedies of [Plaintiff] hereunder are cumulative and may be exercised concurrently or separately. The exercise of any one shall not preclude the exercise of any other remedy. No failure on the part of

---

[1] The Application states that "[o]n or about December 27, 2012, [Plaintiff] entered into a factoring agreement . . . ." (Appl. ¶ 6.) However, because December 27, 2012, has not yet occurred, the Court assumes that Plaintiff typed 2 instead of 0. The Company Authorization Resolution ("the Resolution") was signed by Defendant's president on December 27, 2010. If the Agreement and Resolution were not enforceable as of that date, the Court requests the parties to inform it of the correct date.

> [Plaintiff] to exercise and no delay in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy. . . . Any violation of [Plaintiff's] Rules & Regulations by [Defendant] shall constitute a breach of this Agreement and may, at the option of [Plaintiff], be grounds for termination.

(*Id.* at 2, § 12, 14.)

Defendant's president also signed the Resolution, which exists to help it "maintain, grow, and expand business operations." (Resolution, D.E. # 1-1, at 4.) The Resolution requires Defendant to "adhere to the terms and conditions of the Agreement and specifically understand" four individual items: "(1) [Defendant] shall not invoice [C]ustomers directly; (2) [Defendant] shall not receive or deposit a customer check; (3) [Defendant] shall not take any cash advances from any Customer; or (4) [Defendant] shall not take any action that may compromise [Plaintiff's] security interest." (*Id.*)

The Agreement and Resolution contain two noteworthy omissions or additions. First, Item 3 of the Resolution contains a handwritten addition: "We can per Josh as long as we report them to [Plaintiff]." (*Id.*) Plaintiff does not address this addition. Second, although Defendant signed the Agreement, the signature block for Plaintiff's purported representative, its Chief Financial Officer ("CFO"), is empty and blank. (Appl., D.E. # 1-1, at 3.)

On or about July 31, 2012, Defendant had an open account with Plaintiff of approximately $443,054.69, representing accounts receivable purchased from Defendant for approximately twenty-five account debtors. (Appl., D.E. # 1, ¶ 7.) That same day, Defendant "began contacting the account debtors for the invoices [for these accounts receivable] and directed them to make payments to entities other than [Plaintiff]." (*Id.* ¶ 8.) Plaintiff alleges that

this contact directly contravenes the Agreement and the Notice of Assignment. (*Id.*) Plaintiff did not attach any Notices of Assignment to its Application.

Plaintiff then contacted Defendant and the account debtors to demand that such communications cease and noticed the account debtors of the potential double liability should payments be made to anyone other than Plaintiff. (*Id.* ¶ 9.) When Plaintiff filed the Application, Defendant had not responded to Plaintiff's request to cease and desist. (*Id.* ¶ 10.) Plaintiff does not know how many account debtors Defendant has contacted, but it avers that it will "suffer irreparable economic harm should [Defendant] continue to contact the account debtors and divert the payments due to [Plaintiff]." (*Id.* ¶ 11.) Plaintiff's Application ends by reciting the four factors courts use to decide whether to grant TROs and injunctions. (*Id.* ¶ 12-15.) Finally, Plaintiff requests that "the Court enter an order temporarily restraining [Defendant], its agents, or employees from contacting any account debtors to redirect payments to any entity other than [Plaintiff and] that [Defendant] be order[ed] to remit any diverted payments to [Plaintiff]." (*Id.* at 3-4.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 65(b) governs TROs, and it provides that "the court may issue a [TRO] without written or oral notice to the adverse party or its attorney only if" the moving party satisfies two requirements.[2] First, the moving party must present "specific facts in an affidavit or a verified complaint [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."[3]

---

[2] Fed. R. Civ. P. 65(b).

[3] Fed. R. Civ. P. 65(b)(1)(A).

Second, the moving party's attorney must certify "in writing any efforts made to give notice and the reasons why notice should not be required."[4]

TROs are "extraordinary remed[ies] which should be granted "only in the limited circumstances which clearly demand [them]"[5] and then "only if the movant carries his or her burden of proving that [those] circumstances clearly demand [them]."[6] The factors considered in granting a TRO or a preliminary injunction are similar in nature;[7] thus, when determining whether a plaintiff is entitled to a TRO, courts consider four factors:

> (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.[8]

Courts "balance [these factors] against each other" in their evaluation of whether to issue a TRO, but they do not serve as prerequisites.[9]

## ANALYSIS

At the outset, the Court finds that Plaintiff has not met the initial notice requirements of Rule 65(b)(1). Plaintiff did not file an Affidavit with its Motion. However, Plaintiff's CFO did

---

[4] Fed. R. Civ. P. 65(b)(1)(B).

[5] *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

[6] *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

[7] *Ray v. Franklin Cnty. Bd. of Elections*, No. 2:08-cv-1086, 2008 WL 4966759, at *1 (S.D. Ohio Nov. 17, 2008).

[8] *Leary*, 228 F.3d at 736.

[9] *Overstreet*, 305 F.3d at 573.

verify the Application even though his signature is not notarized, thereby satisfying a broad reading of Rule 65(b)(1)(A)'s requirement that a TRO movant present "a verified complaint." However, Plaintiff has not satisfied Rule 65(b)(1)(B)'s notice requirement. Plaintiff provided an Attorney's Certification indicating that its counsel "advised Defendant's owner Joao Kennedy Barbaso that [he] would be filing this [A]pplication."[10] Plaintiff's counsel approached Defendant's owner on the same day the alleged misconduct occurred and on the same day Plaintiff filed the Application. He "made an attempt to provide notice to Defendant regarding the filing of this [A]pplication," but he does not indicate whether Defendant's owner responded in any way.[11] Plaintiff's counsel did not provide "reasons why [notice] should not be required" as mandated by Rule 65(b)(1)(B). Therefore, the Court finds that the Application does not state facts sufficient to satisfy Rule 65(b)(1). Rule 65(b)(1) permits courts to issue TROs "without written or oral notice to the adverse party or its attorney *only if*" the movant satisfies Rule 65(b)(1)'s two requirements. Because Plaintiff has not done so, the Court cannot issue a TRO. Therefore, Plaintiff's Application is **DENIED**.

Even if Plaintiff had satisfied Rule 65(b)(1)'s requirements, the Court would not grant Plaintiff the relief it requests. The Agreement contains a choice of law provision mandating the application of Tennessee law to the Agreement.[12] In Tennessee, a breach of contract claim contains three basic elements: "(1) the existence of an enforceable contract, (2) nonperformance

---

[10] (Appl., D.E. # 1, at 4.)

[11] (*Id.*)

[12] (Agreement, D.E. # 1-1, at 2, § 9.)

6

amounting to a breach of the contract, and (3) damages caused by the breach of contract."[13] Moreover, "it is well settled that the language used in a contract must be taken and understood in its plain, ordinary, and popular sense."[14] In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning.[15]

The Court finds Plaintiff's request for a TRO unpersuasive, defective, and insufficient. At the outset, Plaintiff's recitation of the four factors courts use to review preliminary injunctions is conclusory at best and devoid of argument and application to the facts at worst. Plaintiff avers that it "has a sufficient probability of success on the merits of its claims against [Defendant] such as to support the entry of a [TRO]."[16] But Plaintiff does not explain what its claims against Defendant are, fails to cite to legal authority supporting its belief that it will succeed on the merits, and does not otherwise attempt to persuade the Court why it will win. Brief, unsupported assertions that "the public interest will be served by the issuance of a TRO"[17] and that Plaintiff "has no other adequate remedy at law to prevent the harm caused by [Defendant's] contact with the account debtors"[18] do not persuade the Court.

---

[13] *ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

[14] *Fisher v. Revell*, 343 S.W.3d 776, 779 (Tenn. Ct. App. 2009) (citation omitted).

[15] *Id.* (citing *Ballard v. North Am. Life & Cas. Co.*, 667 S.W.2d 79 (Tenn. Ct. App. 1983)).

[16] (Appl., D.E. # 1, ¶ 12.)

[17] (*Id.* ¶ 14.)

[18] (*Id.* ¶ 15.)

Furthermore, Plaintiff avers that "the harm that [it] will suffer in the absence of a [TRO] significantly outweighs any prospect of harm to [Defendant] that may be caused by its entry and [Plaintiff] only requests that [Defendant] be barred from doing that which it has no contractual or legal right to do."[19] But the Court is not even sure the parties have a binding contractual relationship at all. Plaintiff's CFO did not sign or otherwise execute the copy of the Agreement provided to the Court; therefore, the Court doubts whether an enforceable agreement between the parties even exists. Therefore, Plaintiff has not set forth the first element of a breach of contract claim: it has not presented facts demonstrating that an enforceable contract exists between the parties. Moreover, Defendant altered the Resolution, but Plaintiff does not explain whether it accepted the alteration. In any case, no representative of Plaintiff signed or acknowledged Defendant's alteration to the Resolution. The Court will not issue extraordinary ex parte relief on such speculative, unsupported grounds.

Even if the parties are bound by the Agreement, Plaintiff's Application does not demonstrate that Defendant has breached the Agreement. As discussed above, the Resolution prohibits Defendant from directly sending Customers invoices, receiving or depositing a Customer's check, or compromising Plaintiff's security interest.[20] Defendant's handwritten edit casts doubt upon whether Defendant may take case advances from Customers.[21] The Agreement itself prohibits Defendant from receiving any kind of payments for any purpose and requires all

---

[19]   (*Id.* ¶ 13.)

[20]   (Resolution, D.E. # 1-1, at 4.)

[21]   (*See id.*)

8

Customers to pay Plaintiff directly.[22] But Plaintiff's scant factual allegations and unclear language and diction do not demonstrate that Defendant has breached the Agreement or the Resolution. Defendant's contact with "the account debtors for the invoices . . . and [direction] to make payments to entities other than [Plaintiff]" may not be a breach of the Agreement if Defendant did these actions without engaging in conduct prohibited by the Agreement or the Resolution. Without more, the Court would be left to speculate about Defendant's alleged conduct, and the Court declines to do so. Plaintiff seeks extraordinary relief; it is Plaintiff's burden to show that the circumstances "clearly demand" such relief. Because Plaintiff has failed to do so, the Court **DENIES** the requested TRO.

Finally, Plaintiff's Application does not contain even a scintilla of citation to relevant legal authority, nor does it contain a memorandum of facts or law setting forth why a TRO is necessary to protect Plaintiff's interests. Local Rule 65.1 permits the Court to consider applications for TROs "only upon compliance with . . . the filing of a motion or complaint seeking such relief."[23] Although Plaintiff has not yet filed its Complaint, the Court interprets Local Rule 65.1 to require applications for TROs to comply with Local Rule 7.2, which governs the contents of motions filed in the Western District. Local Rule 7.2 requires motions to "include or [be] accompanied by a supporting memorandum of facts and law (so identified)."[24] Plaintiff's Application did not contain any reference to law other than the Federal Rules of Civil Procedure and jurisdictional and venue statutes. No citation to case law appears in the

---

[22] (Agreement, D.E. # 1, at 1, § 1(c).)

[23] Local Rule 65.1(1).

[24] Local Rule 7.2(a)(1).

Application's brief five pages of content, and the facts submitted by Plaintiff cover only two of the five pages. Thus, Plaintiff's Application does not comply with the Local Rules.

Plaintiff's Application is marred by several deficiencies. First, Plaintiff has not satisfied Rule 65(b)(1)'s notice requirement. Second, Plaintiff did not provide documentation demonstrating the existence of a binding agreement between it and Defendant. Third, Plaintiff did not allege facts from which the Court could conclude whether Defendant breached any agreement the parties may have. Fourth, Plaintiff violated the Local Rules by not attaching a memorandum of facts and law. For these reasons, Plaintiff's Application for a TRO is **DENIED**. The Court expresses no opinion on the other relief requested in Plaintiff's Motion.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Application is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: August 1, 2012.